# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP340-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Robert Paul D'Arruda, Attorney at Law: |
| | Office of Lawyer Regulation, Complainant, v. Robert Paul D'Arruda, Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST D'ARRUDA

| | |
|---|---|
| OPINION FILED: | June 25, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

**2015 WI 62**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2014AP340-D

STATE OF WISCONSIN          :          IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Robert Paul D'Arruda, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant,**

    **v.**

**Robert Paul D'Arruda,**

      **Respondent.**

**FILED**

**JUN 25, 2015**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1   PER CURIAM.   We review the report and recommendation of Referee James J. Winiarski that Attorney Robert Paul D'Arruda be declared in default, that his license to practice law in Wisconsin be suspended for a period of three years for professional misconduct, that he be required to pay restitution, and that he pay the full costs of this proceeding, which are $2,379.96 as of April 13, 2015.

¶2 We declare Attorney D'Arruda to be in default. We agree with the referee that Attorney D'Arruda's professional misconduct warrants a three-year license suspension. We further agree that Attorney D'Arruda should be ordered to make restitution and to pay the full costs of this proceeding.

¶3 Attorney D'Arruda was admitted to practice law in Wisconsin in 1993 and practiced in Milwaukee. His license to practice law in Wisconsin was temporarily suspended on April 16, 2014, as a result of his willful failure to cooperate in several Office of Lawyer Regulation (OLR) investigations concerning his conduct. His law license is also administratively suspended for failure to pay State Bar dues, failure to comply with continuing legal education requirements, and failure to file a trust account certification.

¶4 Attorney D'Arruda's professional disciplinary history consists of a 2011 private reprimand for misconduct in two felony defense matters. In one matter, Attorney D'Arruda failed to provide a written fee agreement or receipt to the client for a $5,000 payment he received. In the second matter, Attorney D'Arruda failed to provide a written fee agreement when he knew the total cost of representation would exceed $1,000. He also failed to respond to multiple OLR communications. Private Reprimand No. 2011-09. In 2013, Attorney D'Arruda was publicly reprimanded for misconduct in four client matters. The misconduct at issue in that case included failure to communicate with a client, failure to provide a final accounting or refund unearned fees, failure to hold an advanced fee in trust or

2

refund the unearned fee, failure to turn over a client's file to appellate counsel in a timely fashion, and failure to cooperate with the OLR. In re Disciplinary Proceedings Against D'Arruda, 2013 WI 90, 351 Wis. 2d 227, 839 N.W.2d 575.

¶5 On February 12, 2014, the OLR filed a complaint alleging that Attorney D'Arruda had engaged in ten counts of misconduct. An amended complaint alleging 17 counts of misconduct was filed on July 24, 2014. A second amended complaint alleging 42 counts of misconduct was filed on October 22, 2014. Attorney D'Arruda failed to file an answer to the complaint, amended complaint, or second amended complaint. He also failed to appear at multiple telephonic scheduling conferences.

¶6 On January 6, 2015, the OLR filed a motion for default judgment. On January 20, 2015, the referee issued an order advising Attorney D'Arruda that if an answer to the second amended complaint was not filed by February 16, 2015, default judgment would be entered. Attorney D'Arruda failed to file an answer to the second amended complaint or otherwise appear in the case. On March 11, 2015, the referee issued an order recommending that default judgment be granted to the OLR. The referee's report and recommendation followed on March 24, 2015.

¶7 The allegations in the OLR's second amended complaint, which are discussed in detail in the referee's report, will not be extensively repeated here. We will briefly summarize the incidents giving rise to the misconduct.

Representation of S.N. (Counts One through Three)

¶8   In 2011, S.N. hired Attorney D'Arruda to represent him in a criminal misdemeanor case in Waukesha County.  Attorney D'Arruda failed to promptly comply with S.N.'s reasonable requests for information, failed to sign a substitution request and promptly surrender S.N.'s file to successor counsel, and failed to provide the OLR with a written response to S.N.'s grievance.

Representation of O.W. (Counts Four through Seven)

¶9   In October 2011, a probation agent took O.W. into custody on suspicion of manufacturing and delivering heroin and other parole violations.  O.W. hired Attorney D'Arruda to represent him in a probation revocation proceeding and against potential criminal charges.  Attorney D'Arruda failed to communicate with O.W. or respond to his requests for information, failed to provide final accountings, failed to notify O.W. that he wished to terminate the representation, failed to turn over O.W.'s file and refund unearned fees, and failed to provide the OLR with a written response to O.W.'s grievance.

Grievance of W.C. (Count Eight)

¶10  On March 2, 2012, the OLR received a written grievance from W.C. against Attorney D'Arruda.  Attorney D'Arruda failed to provide the OLR with his written response to the grievance in a timely fashion.  The OLR eventually determined that it had insufficient evidence to pursue misconduct counts directly related to Attorney D'Arruda's representation of W.C.

4

Representation of A.M. and J.H. (Counts Nine and Ten)

¶11 In 2012, A.M. hired Attorney D'Arruda to represent her son, J.H. A.M. signed a fee agreement allowing Attorney D'Arruda to place his fees into his business account. The agreement required Attorney D'Arruda to provide A.M. with a final accounting upon termination of his representation. A.M. paid Attorney D'Arruda $1,600 in fees. Attorney D'Arruda deposited those fees into his business account. In April 2013, Attorney D'Arruda moved to withdraw from J.H.'s case because of a conflict. The circuit court granted that request. After withdrawal, Attorney D'Arruda failed to provide A.M. with a final accounting or notices, which Supreme Court Rule (SCR) 20:1.15(b)(4m) requires, regarding fee disputes and arbitration. Attorney D'Arruda also failed to provide the OLR with a written response to A.M.'s grievance in a timely fashion.

Representation of Y.L. (Counts 11-15)

¶12 In November 2012, the state charged Y.L. with two felonies. Y.L. was initially represented by a different attorney but, in March 2013, a friend of Y.L. contacted Attorney D'Arruda about representing Y.L. The friend signed a fee agreement for Y.L. with Attorney D'Arruda. The friend was not authorized to sign on Y.L.'s behalf. Attorney D'Arruda never gave Y.L. a copy of the fee agreement. The friend paid Attorney D'Arruda an advanced fee of $1,000 to represent Y.L., and later paid him an additional $500 in the matter. Attorney D'Arruda did not appear at Y.L.'s trial, did not respond to voicemails and text messages from Y.L., and did not give Y.L. an accounting

5

of fees, refund the $1,500, or provide Y.L. with information on disputing the fee. He also failed to provide the OLR with a written response to Y.L.'s grievance.

Grievance of A.A. Sr. and A.A. Jr. (Count 16)

¶13 On April 5, 2013, the OLR received a grievance from A.A. Sr. and A.A. Jr. regarding Attorney D'Arruda's representation of A.A. Jr. Attorney D'Arruda failed to file a timely response to the grievance. The OLR eventually determined that it had insufficient evidence to prove misconduct directly related to Attorney D'Arruda's conduct in his representation of A.A. Jr.

Grievance of S.O. (Count 17)

¶14 On February 27, 2013, the OLR received a written grievance from S.O. Attorney D'Arruda failed to file a timely response to the grievance. The OLR subsequently determined that it had insufficient evidence to prove misconduct directly related to Attorney D'Arruda's conduct in his representation of S.O.

Representation of D.P. (Counts 18-20)

¶15 In December 2013, Attorney D'Arruda represented D.P. in a Milwaukee County case. A jury trial was scheduled for December 2, 2013. Attorney D'Arruda failed to appear for the scheduled jury trial. Instead, another attorney appeared with a letter from Attorney D'Arruda addressed to the judge. Attorney D'Arruda's letter represented that, as of November 26, 2013, the OLR had temporarily suspended Attorney D'Arruda's license to practice law. Attorney D'Arruda requested that the court

6

adjourn the trial. In fact, Attorney D'Arruda's law license was not suspended as of either November 26 or December 2, 2013. Attorney D'Arruda also failed to provide the OLR with a written response to D.P.'s grievance in a timely fashion.

Representation of S.N. and R.M. (Counts 21-26)

¶16 In July 2013, the state charged S.N. with two misdemeanors. In February 2014, S.N. was charged with a felony. On February 27, 2014, this court ordered Attorney D'Arruda to show cause by March 19, 2014, why his license to practice law should not be suspended for failure to cooperate with the OLR's investigation of several matters. Attorney D'Arruda failed to respond to the order to show cause.

¶17 On March 29, 2014, S.N.'s mother, R.M., hired Attorney D'Arruda to represent S.N. in the two criminal cases. R.M. signed a fee agreement and paid Attorney D'Arruda an advanced fee of $2,000. On April 10, 2014, Attorney D'Arruda appeared in S.N.'s misdemeanor case and filed a request for substitution of attorneys. He never appeared in S.N.'s felony case.

¶18 On April 16, 2014, this court temporarily suspended Attorney D'Arruda's license for noncooperation in several matters. Attorney D'Arruda never notified S.N. or the judges presiding in her cases of his suspension. Attorney D'Arruda did not give S.N. or R.M. an accounting of fees, refund the $2,000, or provide information on disputing the fee. Attorney D'Arruda failed to respond to S.N.'s grievance. In August 2014, the Wisconsin Lawyers' Fund for Client Protection (Fund) paid R.M. $2,000 for reimbursement of money given to Attorney D'Arruda.

7

Representation of I.P. and D.M. (Counts 27-31)

¶19 In June 2013, the state charged I.P. with multiple felonies. On January 2, 2014, I.P.'s mother, D.M., hired Attorney D'Arruda to represent I.P. D.M. signed a fee agreement and paid Attorney D'Arruda an advanced fee of $1,500. On March 3, 2014, Attorney D'Arruda appeared with I.P. at a status conference. A trial date was set for May 12, 2014. By April 11, 2014, D.M. had paid Attorney D'Arruda an additional $1,600. On April 16, 2014, Attorney D'Arruda's license was temporarily suspended. Attorney D'Arruda never notified I.P. of his suspension. He failed to provide an accounting of fees, failed to refund fees, and failed to respond to the OLR's grievance investigation.

Representation of T.S. (Counts 32-36)

¶20 On February 22, 2014, the state charged T.S. with multiple misdemeanors. T.S. hired Attorney D'Arruda to represent him on April 1, 2014. T.S. signed a fee agreement and paid Attorney D'Arruda an advanced fee of $500. Attorney D'Arruda appeared with T.S. at a status conference on April 11, 2014. Attorney D'Arruda never notified T.S. that his law license was temporarily suspended on April 16, 2014. He did not give T.S. an accounting of fees, did not refund the $500, and did not provide T.S. with information about disputing the fee. In August 2014, the Fund paid T.S. $500 for reimbursement of money given to Attorney D'Arruda.

Representation of L.S. and L.L. (Counts 37-42)

¶21 On December 4, 2013, the state charged L.S. with a felony. On January 20, 2014, the state charged L.S. with additional felonies. On March 5, 2014, L.S.'s friend, L.L., hired Attorney D'Arruda to represent L.S. in the criminal cases. L.L. signed a fee agreement on L.S.'s behalf and paid Attorney D'Arruda an advanced fee of $2,500. Attorney D'Arruda appeared at a status conference on March 27, 2014. A pretrial was scheduled for May and a trial date was set for June. Attorney D'Arruda failed to notify L.S. or the circuit court that his law license was temporarily suspended on April 16, 2014. Attorney D'Arruda failed to provide L.S. or L.L. with an accounting of fees, failed to refund the $2,500, and failed to provide information on disputing the fee. Attorney D'Arruda also failed to respond to the OLR's request for information about L.L.'s grievance.

¶22 The referee said that, although Attorney D'Arruda was given several extensions and was encouraged to file an answer to the second amended complaint, he instead chose to default. The referee commented that, by failing to appear and explain his misconduct, Attorney D'Arruda put the referee in a most difficult position. Given Attorney D'Arruda's failure to appear and respond to the allegations in the case, the referee found that the OLR met its burden of proof with respect to all allegations in the second amended complaint.

¶23 With respect to the appropriate sanction, the referee noted that this case includes many instances where Attorney

9

D'Arruda accepted monetary payments from clients for legal services he was to render. In many instances, those initial payments by clients were placed into Attorney D'Arruda's business account rather than into his trust account. Attorney D'Arruda repeatedly failed to provide an itemized statement to his clients or otherwise account for the disposition of payments received from his clients. The referee said that this conduct was similar to that for which Attorney D'Arruda was both privately and publicly reprimanded in the past. The referee said:

> I am most bothered by the fact that in numerous instances, when Attorney D'Arruda knew his license to practice law was going to be temporarily suspended, he continued to accept new cases and payments from new clients, knowing he was about to have his license temporarily suspended. Without the benefit of an explanation from Attorney D'Arruda, I can only conclude that Attorney D'Arruda knowingly accepted monetary payments from new clients and that he had no intention of fulfilling his duties to represent the clients or return the money once his license was temporarily suspended. In other words, Attorney D'Arruda intentionally took money from new clients with no intention of providing legal services to them and with no intention of refunding the money paid by these clients. This is intentional misconduct of a most serious nature.

¶24 The referee said that Attorney D'Arruda's misconduct was most serious and repetitive in nature. The referee opined that a high level of discipline is needed to protect the public and the legal professional against such misconduct and that a high level of discipline is also needed to impress upon Attorney D'Arruda the seriousness of his misconduct and deter similar

misconduct by other lawyers. While the referee commented that Attorney D'Arruda's misconduct could justify revocation of his law license, the referee ultimately agreed with the level of discipline sought by the OLR, a three-year suspension of Attorney D'Arruda's license. In addition, the referee recommended that Attorney D'Arruda be ordered to pay restitution of $1,500 to Y.L., $2,500 to L.L., and $2,500 to the Fund ($2,000 for S.N. and R.M.; $500 for T.S.). Finally, the referee recommended that Attorney D'Arruda be required to pay the full costs of the proceeding.

¶25 Attorney D'Arruda has not filed an appeal from the referee's report and recommendation.

¶26 We agree with the referee that Attorney D'Arruda should be declared in default. Although Attorney D'Arruda was personally served with the second amended complaint and was given notice of the hearing on the motion for default judgment, he failed to appear or present a defense. Accordingly, we deem it appropriate to declare him in default.

¶27 A referee's findings of fact are affirmed unless clearly erroneous. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. We review the referee's conclusions of law de novo. Id. We determine the appropriate level of discipline independent of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶28 We agree with the referee that the allegations in the OLR's second amended complaint have been established and that

11

Attorney D'Arruda engaged in the 42 counts of misconduct alleged in the complaint.  Attorney D'Arruda violated the following supreme court rules, some in multiple instances:  20:1.4(a)(3) and (4);[1] 20:1.4(b);[2] 20:1.5(a);[3] 20:1.5(b);[4] 20:1.15(b)(4m)b.;[5]

---

[1] SCR 20:1.4(a)(3) and (4) provide that a lawyer shall "keep the client reasonably informed about the status of the matter" and "promptly comply with reasonable requests by the client for information."

[2] SCR 20:1.4(b) provides that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[3] SCR 20:1.5(a) provides:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(continued)

12

(8) whether the fee is fixed or contingent.

[4] SCR 20:1.5(b) provides:

(1) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate as in the past. If it is reasonably foreseeable that the total cost of representation to the client, including attorney's fees, will be $1000 or less, the communication may be oral or in writing. Any changes in the basis or rate of the fee or expenses shall also be communicated in writing to the client.

(2) If the total cost of representation to the client, including attorney's fees, is more than $1000, the purpose and effect of any retainer or advance fee that is paid to the lawyer shall be communicated in writing.

(3) A lawyer shall promptly respond to a client's request for information concerning fees and expenses.

[5] SCR 20:1.15(b)(4m)b. provides:

Upon termination of the representation, the lawyer shall deliver to the client in writing all of the following:

1. a final accounting, or an accounting from the date of the lawyer's most recent statement to the end of the representation, regarding the client's advanced fee payment with a refund of any unearned advanced fees;

2. notice that, if the client disputes the amount of the fee and wants that dispute to be submitted to binding arbitration, the client must provide written notice of the dispute to the lawyer within 30 days of the mailing of the accounting; and

(continued)

20:1.16(d);[6]  20:3.3(a)(1);[7]  20:8.4(c);[8]  22.03(2) and (6),[9]

enforced via 20:8.4(h);[10] and 22.26,[11] enforced via 20:8.4(f).[12]

---

3. notice that, if the lawyer is unable to resolve the dispute to the satisfaction of the client within 30 days after receiving notice of the dispute from the client, the lawyer shall submit the dispute to binding arbitration.

[6] SCR 20:1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[7] SCR 20:3.3(a)(1) provides that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

[8] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[9] SCR 22.03(2) and (6) provide:

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and

(continued)

14

present any information deemed relevant to the investigation.

. . . .

(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[10] SCR 20:8.4(h) provides that it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

[11] SCR 22.26 provides:

(1) On or before the effective date of license suspension or revocation, an attorney whose license is suspended or revoked shall do all of the following:

(a) Notify by certified mail all clients being represented in pending matters of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation.

(b) Advise the clients to seek legal advice of their choice elsewhere.

(c) Promptly provide written notification to the court or administrative agency and the attorney for each party in a matter pending before a court or administrative agency of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation. The notice shall identify the successor attorney of the attorney's client or, if there is none at the time notice is given, shall state the client's place of residence.

(d) Within the first 15 days after the effective date of suspension or revocation, make all

(continued)

15

arrangements for the temporary or permanent closing or winding up of the attorney's practice.  The attorney may assist in having others take over clients' work in progress.

(e) Within 25 days after the effective date of suspension or revocation, file with the director an affidavit showing all of the following:

(i) Full compliance with the provisions of the suspension or revocation order and with the rules and procedures regarding the closing of the attorney's practice.

(ii) A list of all jurisdictions, including state, federal and administrative bodies, before which the attorney is admitted to practice.

(iii) A list of clients in all pending matters and a list of all matters pending before any court or administrative agency, together with the case number of each matter.

(f) Maintain records of the various steps taken under this rule in order that, in any subsequent proceeding instituted by or against the attorney, proof of compliance with the rule and with the suspension or revocation order is available.

(2) An attorney whose license to practice law is suspended or revoked or who is suspended from the practice of law may not engage in this state in the practice of law or in any law work activity customarily done by law students, law clerks, or other paralegal personnel, except that the attorney may engage in law related work in this state for a commercial employer itself not engaged in the practice of law.

(3) Proof of compliance with this rule is a condition precedent to reinstatement of the attorney's license to practice law.

¶29 We further agree with the referee that a three-year suspension of Attorney D'Arruda's license to practice law in Wisconsin is an appropriate sanction for his misconduct. Although no two fact situations are identical, we find the misconduct at issue here somewhat analogous to the conduct at issue in In re Disciplinary Proceedings Against Cooper, 2007 WI 37, 300 Wis. 2d 61, 729 N.W.2d 206, and In re Disciplinary Proceedings Against Bryant, 2015 WI 7, 360 Wis. 2d 625, 858 N.W.2d 681, in which three-year suspensions were also imposed. Cooper involved 35 counts of misconduct affecting seven clients. This case involves 42 counts of misconduct affecting 12 clients. In all three cases, the attorneys failed to comply with clients' requests for information, failed to explain matters to the extent reasonably necessary to permit clients to make informed decisions regarding the representations, and failed to timely respond to the OLR's requests for information. Although Attorney D'Arruda's prior disciplinary history is not extensive, the misconduct at issue here is very serious and warrants a significant sanction. We also agree that Attorney D'Arruda should make restitution as recommended by the referee and that he should be required to bear the full costs of this proceeding.

---

[12] SCR 20:8.4(f) provides that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

17

¶30 IT IS ORDERED that the license of Robert Paul D'Arruda to practice law in Wisconsin is suspended for a period of three years, effective the date of this order.

¶31 IT IS FURTHER ORDERED that within 60 days of the date of this order, Robert Paul D'Arruda shall make restitution as follows: $1,500 to Y.L.; $2,500 to L.L.; and $2,500 to the Wisconsin Lawyers' Fund for Client Protection.

¶32 IT IS FURTHER ORDERED that within 60 days of the date of this order, Robert Paul D'Arruda shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $2,379.96.

¶33 IT IS FURTHER ORDERED that the restitution specified above is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶34 IT IS FURTHER ORDERED that, to the extent he has not already done so, Robert Paul D'Arruda shall comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been suspended.

¶35 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.29(4)(c).